David C. Wright, MPO
Pittsburgh Police
Lead Instructor: Police Use of Force,
Defensive Tactics & Physical Fitness
Pittsburgh Police Training Academy
1395 Washington Blvd
Pittsburgh Pa 15206

**Telephone:**

412-298-4313

**Email:**

David.wright@pittsburghpa.gov

March 2, 2012

Mr. Bryan Campbell, Esq.
330 Grant Street, Suite 2620
Pittsburgh, PA 15219

RE:   Jeff Collins (Plaintiff) v. City of Pittsburgh, Chief of Police Nathan Harper,
   Officer Freeman, Officer Shanahan, and Officer Rosato (Defendants)
   US District Court for Western District of PA
   Civil Action NO. 10-701

Please accept this letter as my report for the above referenced case. I reserve the right to amend this report should additional information become available.

**Qualifications**

I am a full-time police officer and the lead use of force, defensive tactics, and physical fitness instructor for the Pittsburgh Police and it's training academy. In addition, I serve in the same capacity with the Community College of Beaver County's Police Academy. Enclosed with this letter is an outline of my professional vitae.

I have been asked to review the case material and to render a professional opinion regarding the police officers use of force.  The opinion given is based on the belief that all information and reports given by the police are indeed accurate and truthful.

**Material Reviewed**

In the preparation of this report, I have reviewed the following materials:

1. Opinion Report of John G. Peters, Jr., PhD
2. Police Reports
3. Depositions of Officers Shanahan & Rosato
4. OMI Reports, Transcripts, & Final Report

**Summary of Facts**

On September 21st, 2006 at approximately 1730 hours, Jeffrey D. Collins was driving his Ducati motorcycle (PA Plate RSW76mc) in the Oakland section of the City of Pittsburgh.

At this time Collins was observed by Pittsburgh Police Officers Freeman, Shanahan, and Rosato to be driving recklessly and in violation of multiple PA vehicle code violations. All three of these officers were working together in a plain clothes capacity as they were assigned to the "99" car. In this capacity the officers work primarily in unmarked cars. The unmarked police vehicle was a tan Oldsmobile Alero.

The officers attempted to get Collins to pull over through verbal means and show of identification; however, he refused to do so and drove off. Due to heavy traffic Officers Shanahan and Freeman were able to catch up to the motorcycle as it was stuck in traffic. At this time Officer Rosato was parking the police vehicle.

Once detained by police (Shanahan & Rosato), Collins continued to ignore the officers' requests and verbal direction. Collins did so even after again being shown proper identification.

While Collins did continue to question whether or not the officers were indeed police officers, according to police reports his behavior was excited and combative along with slurred speech.

During this traffic stop/detention Collins continued to be resistive in his behavior. He was verbally non-compliant and exhibited assaultive body language. An example of this is when he step off his motorcycle he stated "Get the fuck away from me". He said this while he assumed a fighting posture with his fist clenched.

Collins was forcibly handcuffed by Officers Shanahan and Freeman. However, Collins continued to resist by pulling away. At this time Collins was taken to the ground with both he and Officer Freeman losing balance. As a result, Collins appeared to be unresponsive and sustain a head injury. The officers immediately notified Medics to the scene as they and other officers monitored his wellbeing until they arrived. Upon arrival Medic 5 transported Collins to Mercy Hospital for medical treatment.

**Opinion**

The police officers actions and their use of force were necessary and reasonable. The officers' actions were within the federal guidelines/law, state law, and departmental policy.

There is a justified reason for the traffic stop. Jeff Collins (herein referred to as "actor") was in clear violation of the law/vehicle code (numerous offenses). Additionally, based on the time of day, area, vehicular and pedestrian traffic the actor's actions put his safety and others at risk. Furthermore, it is of my opinion that the traffic stop was done by officers on foot rather than vehicle and by means of a vehicle pursuit. When the actor fled the officers elected to pursue on foot due to heavy traffic.  In short, there was no vehicle pursuit. However, prior to the stop/seizure taking place the actor exhibited resistance by disregarding the Officer(s) attempts to pull him over (while the officers were in a vehicle). On this first attempt the actor ignored the officer's requests and show of identification as he shock his head to indicate "no" as they requested he pull over.

Additionally, though the officers are not working in a uniform capacity they still maintain their legal authority. Yes, police officers working in plainclothes capacity have a more difficult job in identifying themselves versus that of a uniformed officer. However, in this incident the officers on several occasions verbally and physically (show of badge/ID) identified themselves as police officers. With the officers now conducting a lawful stop and having identified themselves the actor continued to resist. Upon getting the actor to successfully pull over, he still refused to be compliant & cooperative. Only after more than one request did the actor use his kickstand and remove himself from his motorcycle. However, even upon doing this the actor continued to show obvious signs of resistance. His body language indicated assault (the clinching of his fist in a combative manor) and his language too was resistive ("Get the fuck away from me.")

At this point, a decision to arrest the actor was made. This decision was based on probable cause of violations of the law. At this time, Officer Freeman put on the first handcuff and the actor further resisted by tensing up his arms and pulling away. This

2

is a very common time (application of the first handcuff) for escalation of resistance. Officers Shanahan and Freeman were able to forcibly handcuff him while dealing with his continued active resistance. The decision to take the actor to the ground was made.

Was taking the handcuffed actor who was still actively resisting to the ground "reasonable"? The answer is yes. First, there was heavy traffic and therefore in order to protect both the officer and the actor from the traffic and diminish the likelihood of someone being hit by a vehicle the need to ground the actor would be reasonable. Coupled with the fact that the officers will also need to do a thorough search incident to the arrest the need to ground the resisting actor would be reasonable. If he were not brought under better control the chance for missing a dangerous weapon or illegal contraband would be heightened. Lastly, the actor is continuing to resist. He is struggling, not being cooperative or compliant even though handcuffed. Due to this, there is an overall officer safety issue in regards to protecting oneself from possible assault. The mere fact that he is handcuffed does not necessarily mean he cannot continue to resist, flee, or assault. Given these facts, it is of my opinion that taking him to the ground was indeed reasonable.

The injury to the actor occurs during the takedown. This injury can best be described as unintentional. However, based on case law (Garrett v. Athens-Clarke County) it is recognized that "almost every use of force, however, minute, poses some risk of death". There were many factors contributing to the injury. Those factors were the actor's resistance, the environment, loss of balance on behalf of the officer and possibly the type of takedown used. The mere fact that there was an injury does not mean that the force was excessive. To further show this, the opposite is also true-that use of force without injury can be "excessive force".

**Concluding Opinion**

To conclude, I believe the actions of the police officers on scene were "reasonable, necessary and justifiable." I believe that their actions are in line with the criteria that the Supreme Court set forth in Graham v. Connor and its "reasonableness standard."

The "reasonableness standard" is based on the facts and circumstance confronting them and known to them at that exact time of the applied force. When looking at the "reasonableness standard" we are required to look at it through the eyes of the officer on scene who and not through the pleasure of 20/20 hindsight. Officers must make split-second decisions in tense, uncertain and rapidly evolving situations and to judge in hindsight is neither fair nor permitted per Graham v. Connor.  Additionally, we are to go by the "totality of the circumstances" as known by the officers at the moment force is used. At this point, the officer know this individual is a flight risk, they know that based on his language (verbal & non-verbal) that he is a threat to assault them, they also know that based on traffic concerns that there is a real danger to both he and them if this encounter would go into the street. Additionally, the officers do have lawful authority for the stop/arrest. In regards to the injury, while unfortunate it is not what is of issue when it comes to the question of whether or not the use of force was "reasonable" or "excessive". What comes into play is based on the above-mentioned criteria whether or not the use of force fits the "objective (logical) reasonable standard" as set forth in Graham v. Connor and the 4th Amendment. In this particular incident, the officer(s) actions were based on the totality of the circumstances known to them and their actions in regards to their force were "objectively reasonable".